trial over a timely objection in every instance about countless crime, specific incidents, other events they refer to them as, many robberies, there was even testimony about more than five robberies. None of this demonstrated a formulation and development of a relationship between the co-defendants. This was in fact prohibited propensity evidence. The point of introducing all of these crimes at trial was to establish the old aphorism once a criminal always a criminal. Mr. Feldman, was there any claim by any of the defendants that they did not know each other in advance? Or was there any claim or argument that they had no reason to trust one another? No, there was not. None of the crimes that are at issue of Helland's brief established the signature element of a mini police force that the defendants engaged in in order to establish teamwork and a unique role that each defendant played in this particular crime. The government's position was similar to the district court, that it showed the development of a relationship and if the government's position is accepted, every time defendants are charged in a conspiracy, the government can then introduce every crime they've ever committed their entire lives together without any analysis, without any 403 analysis. They committed crimes together and according to the government, that shows their relationship of trust. When you say they committed crimes together, could you more precisely tell us to what extent was there or was there not an overlap between, to use the term, the issue charged in this case and each of the prior ones? There was almost none. There was no analysis conducted by the district court regarding Your Honor's point. If the government had introduced evidence that of the 15 to 20 prior crimes admitted, two involved the mini police force tactic of robbing a drug dealer, in that situation there would be an argument that could be made that there is a relationship of trust. The jury could then understand how each member of the conspiracy had a specific role on that team in shaking down drug dealers by using rogue Puerto Rico police officers, but almost none of the crimes had anything to do with that situation. I'm afraid I don't quite understand how it's not relevant evidence. I mean it seems to me it's relevant in the same way that the government might have shown that they were all childhood friends and grew up together on the same block, that sort of thing. It seems to me that this is a straight 403 question. Well, under 403 there was almost no analysis about whether the prejudice was substantially outweighed by the probative value. And here the prejudice was absolutely enormous. The jury's focus throughout this trial was on the prior crimes of this corondo as opposed to the indictable offense. Had the district court looked at the prior crimes, even when one of the witnesses said he was involved in more than five robberies at Appendix 176 of Pellon's brief, the judge never once conducted a 403 analysis. Judge Lynch, do you have any questions of Mr. Feldman? No, I do not. Thank you. Why don't you take 30 seconds and wrap up. Okay. Your Honor, just dealing with Rule 403, had the court in the face of an objection said we should have a sidebar, we should make a determination about the prejudice versus the probative value, what the court would have learned was these crimes that the witnesses repeatedly talked about were so generic, five robberies, other crimes, other incidents, the jury could only draw the conclusion the defendant had to be guilty even though there were substantial questions in this case. The evidence was not strong against the defendant. There was no DNA, no video, no audio. It was the entire case rested on cooperating witnesses and even their evidence was contradicted by the pathologist about the cause of death of the victim. So it's because the evidence was not overwhelming that these constant 404 and 403 errors were so enormously prejudicial  Thank you. Thank you very much, Your Honors. Ms. Middleman, good morning. Good morning. I'd like to reserve one minute for rebuttal. Elaine Middleman for Eric Diaz-Colon. I believe that the reasoning and the holding of Justice Souter and the Supreme Court in Jones should apply to this case, specifically the Civil Rights Statutes 18 U.S.C. 241 and 242. Justice Souter explained that the findings of bodily injury or death should be treated as separate offenses so that in the carjacking statute there are three separate offenses that need to be put in the indictment and found by the jury. And that's not what happened in this case. The convictions under Count 5 and 6, the issue about death was treated as a special question, special interrogatory, not an element of the crime. The question said if you find the defendant guilty, then make the finding about death. So that was not treated as an element of the crime. And I think that what Justice Souter pointed out, that having death be such a significant increase in punishment, obviously, I mean life in prison, excuse me, should be treated as an element of a crime, not as a special verdict. And I think the courts have, since Jones have been apprending now Lane, that there's been much discussion about the difference between elements of the crime and special interrogatories, sentencing factors, etc. And I think this is just another example of statutes that really this court needs to address that focus. The statute cited by the government was, I mean the case cited by the government was I think from 1991, which is before Jones, so it is no longer a good lie, I don't believe. For example, the Tenth Circuit in Hathaway citing another statute said they had to apply Jones. They didn't even question that. And so I think this court needs to apply Jones the reasoning and say that these crimes were not included in the indictment and charged to the jury. Okay, so if we accept that though, for count six you have a plain error standard of review. Do you not? Well, I think it's a fundamental, I think that's what Jones said, Justice Souter talked about the document of constitutional doubt, and I think that you're required to address that and construe that in favor of the defendant. So even under plain error, I think it needs to be charged to the jury and found as part of an element of the crime. But it's not structural error, I take it. I don't know what you mean by structural. It's a fundamental error. I think that's what Jones was all about. There has to be something with a crime that has a possibility of life sentence should be treated as an element of the crime. Sure, and I'm saying if we accept that under Cotton, nevertheless, if the evidence was overwhelming, there's no relief granted. I don't, I think that still has to be tried at the jury. I don't think that, I think the jury needs to know ahead of time that's what the elements are before, I don't think that Cotton really applies here. And I would say on the first charge, which had a much lower sentence, This is the 371 conspiracy? The elements, again, were not set out in count one. But does that even matter? The 371 conspiracy has a five-year maximum penalty. Right. As I said in the sentence, it doesn't matter. I mean, it's a much lower sentence. But in terms of the process. The conviction itself? Correct. In terms of the process itself, because when I was reading this last night, it occurred to me that, in fact, really what happened here, I'd say, was more of a kidnapping than a carjacking. The carjacking isn't really what even happened here. And so I think if there had been better advice as to what the elements of the carjacking were with the death resulting, that the jury might have at least addressed what were the factors of the carjacking. Judge Lynch? No questions. Okay. Thank you. You're reserved. Good morning, Your Honors. Government counsel, may it please the Court. My name is Paul Kimmerer and I am the Court Appointed Counsel for Apollon Carlos Aponte-Sobrado. Your Honor, I would submit that the government is incarcerating Mr. Aponte-Sobrado only because they were allowed to vouch for the credibility of their cooperating witnesses. And I say only because there wasn't any fingerprint evidence tying this offense to Mr. Aponte-Sobrado. There wasn't any DNA evidence The only evidence tying Mr. Aponte-Sobrado to this offense was these cooperating witnesses who court-appointed pathologists testified could not have been testifying accurately. Or his actual testimony was that it was extremely unlikely that these cooperating witnesses were testifying inaccurately. The first thing that the Court would need to consider in deciding this case is whether it's going to sanction the longstanding practice of having one party object on behalf of all the parties in a multi-party trial. In this case, there were four defendants and during the government's rebuttal, while the government was vouching for its witnesses, one of the attorneys objected three times. And the District Court ignored that objection in the sense that it didn't make any rulings. The government submits that because Mr. Aponte-Sobrado did not object, this Court should review this error for plain error. My position is that it's standard practice in a case like this and it preserves judicial resources when only one attorney objects on behalf of all the other attorneys. It's also significant that the District Court didn't address these three objections. If the Court is going to force every attorney to object on behalf of his clients, you'd have a case where there are 12 objections because there are four parties here just to preserve this one error. Was there an objection by any counsel to the specific language that you were complaining about in your brief on appeal? Your Honor, the objection was, he is vouching, Your Honor, he is vouching. But didn't that objection take place before the statement that is raised on appeal? Yes, Your Honor, but that objection occurred three times without any action by... That says to me that there were three other things that the prosecutor said that at least one defense counsel objected to and you're appealing from none of those but then the prosecutor said a fourth thing which, as I understand it, no defense counsel objected to that fourth thing and that's the thing that you were appealing. Not contemporaneously, Your Honor, but there was an objection on the basis of vouching immediately after rebuttal. You're correct that none of the attorneys mentioned this particular statement that I'm raising but I think the government and the Court should have been notice that a statement like this which seems to be pretty flagrant was the subject of the objection. And then, Your Honor, on the multiple versus single objection was there any discussion with the Court by defense counsel on whether one would speak for all or not? I started the record and I didn't find anything like that. So suppose one of you wants to object to something that the other doesn't want to object to. How does that work? How does the Court know that you're not all objecting to it? Well, I'm not sure that would have made any difference in this case because the District Court didn't rule on this objection but even aside from that issue, Mr. Aponte-Sobrato, through his counsel, personally objected immediately after the government's rebuttal. So even if Your Honor does not accept a co-defendant's objection contemporaneously, Your Honor should consider that there was an objection immediately after the rebuttal. Counsel, do you mind if I test the merits of your arguments just briefly? So, if the claim is made that the witnesses told different stories, certainly the government could comment on the evidence and say if the government's I'm sorry, I don't want to use the word government. If the theory of the prosecution were X, you would expect them to come in with the same story. You know they're telling the truth because they came in with different stories. That commentary would be okay, wouldn't it? Absolutely, Your Honor. So in this case, what we have is we have an accusation that the government got greedy by bringing in two people with different stories. Where the government is accused like that, why can't the prosecutor say if the government were being greedy and then go on and comment on the evidence? I don't understand why this should be considered vouching. It's simply defending an accusation that the government did something. Your Honor, the greedy comment didn't come from Mr. Aponte-Sobrato. So I would ask the courts to not impose that burden on him. But aside from that, the greedy comment was directed... So what the government needs to do is to say with respect to counsel's comment, as to his client, we can say the government didn't do anything wrong. As to the other clients, don't take the word government, just comment on the evidence. That just doesn't sound realistic to me. I understand, and that's not what I'm suggesting, but I'd ask that the court consider the exact controversial comment. They could have all been put, all the cooperators in a room and say let's get this story straight. We didn't do that. That's an implication that we, meaning the person who's in front of the jury right now, didn't conspire with these... That's the prosecutor, right? The accusation was that the government got greedy by bringing in these people with different stories. Even the term greedy, as offensive as it is, does not imply that the government... It's the word government that I'm focusing on. You see what I'm saying? I understand the point. My response would be that the greed does not... It does not implicate... It normally does not mean conspiracy to perjure oneself. Judge Lynch? Do you have any questions of Mr. Camarena? No, thank you. Thank you, counsel. Good morning, everyone. Your Honors, I'd like to start the arguments in reverse based on the most recent argument from Carlos Aponte Sobrado. If you look at the record and you read the rebuttal argument, it is clear that the prosecutor's limited comments in this area when the prosecutor addressed the cooperator's truthfulness or untruthfulness was in direct response to every defense attorney's remarks regarding their untruthfulness. If you scour the defense attorney's summations, they spent an abundant amount of time accusing the prosecutors of lying, accusing them of not only being inconsistent, but lying because they wanted a favorable reduction in sentence. You can't normally say, look, we the government would have had a problem if they all told the same story, but because their stories conflicted, we didn't have a problem. That sounds like you're having... At best, it's a poor choice of words, but when you read the rebuttal argument, it is clear that the prosecutor was not intending to put the government or the prosecutor's integrity behind the cooperators. If you read the rebuttal argument in whole, it's clear the prosecutor was just using that as an example to reflect that if they were consistent, then you jury should say that that's suspicious and that definitely affects their credibility. That's the context of that argument. If you take it for face value, then yes, you are going to lean towards what the defense counsel is saying, but if you look at the rebuttal argument in total, you will get the true gist of where the comment was coming from. The government believes that this argument could easily be dismissed because the rebuttal argument was very limited. It highlighted facts that were in evidence, the plea agreements, the cooperation agreements, which clearly discussed each cooperator's obligations to tell the truth. It clearly mentioned that the government was under no obligation to file a motion for reduction. It clearly mentioned that the only obligation each cooperator had was to tell the truth and that the result or the outcome would not come into play. So therefore, the facts and evidence clearly can be used to dismiss that claim. But still, counsel, you have to concede Judge Kayotta's point, don't you, that ordinarily the government can comment on the evidence, but it can't say, you know, if we wanted to cook the evidence, we would have had them all come in and say the same thing because you know that we didn't do that. I mean, you can't ordinarily do that. Again, Your Honor, at best it's a poor choice of words, but again, and I reiterate, if you look at the rebuttal argument, and the piece that pertains to this in total, you get the gist of what the prosecutor was arguing. And the prosecutor in no way was putting himself or the government's integrity behind the cooperators. If you look at it in totality, you get the gist of what the argument was. And again, at best it was a poor example or poor choice of words. Your Honor, as to D.S. Cologne, counsel did not focus on her argument that she made an appeal, but focused on her argument that she made an appeal or her client's pro se supplements that he filed on his own, which were basically the same arguments he made at the lower court. The civil rights statutes charge one offense. 241, which is the conspiracy, and 242, which is the substantive charge, they each charge one offense. And they each have enhancements based on the type of harm that was caused. In the case of both statutes, death resulting enhances the penalty. It's a factor which enhances the penalty. It's not an element of the crime. In this particular case, in this argument, can resolve many of D.S. Cologne's claims that he mentions on appeal. That factor, while it wasn't directly mentioned in Counts 5 and 6, did not need to be because it is a sentencing enhancing factor. The indictment as a whole gave D.S. Cologne clear notice that he was being charged with conduct where death resulted. During plea negotiations, an issue that he brings up, he's seeking specific performance for a plea offer which the government rescinded. In that plea offer, the government made clear that he was being charged with conduct where death resulted. Throughout the trial, the trial, from the opening statements on, it was clear that he was being charged with participating in conduct where death resulted. There was testimony that he was the person who not only ordered but authorized the killing of the victim. And then the jury instructions, which he did not object to, made it clear that he was going to be considered for the enhancement based on his role in death resulting. To argue now, Your Honor, that for some reason it was defected, it should be dismissed again on its face because of that. Not only was it, it wasn't directly mentioned in counts five and six. We argue that it did not need to be because it was a factor and it was an element of the crime, but it was overwhelming evidence that this was a carjacking, not a kidnapping, that resulted in death. The jury considered the factor, the death resulting factor and ruled that as to count five, D.S. Cologne was responsible for the death of the victim. I don't understand how bodily injury or death in the context of these charges, it should be considered a factor, something that a judge would balance in deciding what sort of sentence to give. It's a fact that had to be proved to the jury in order to enhance the sentence. And it was, but it's not a fact that needed to be charged in indictment. That is our argument, that yes, it had to be proved and it was and it was submitted to the jury and it was, but it's not something that had to be charged in the indictment. It's not fatal that the language bodily injury and death resulting was not contained in counts five and six. Because it is a sentencing factor and not an element of offense. As this court had ruled in 1991 and we do not believe Jones overrules. You don't? Jones an apprentice? No. Respectfully Your Honor, we don't. We believe that case that came out of this court is still good law. Your Honor, moving on to the 4-4-B argument made by Viscarondo Casanova. If you read the court's opinion in order, the court went great lengths, Judge Viscoso went great lengths to balance what the government was seeking to introduce with what he allowed to introduce. It's hard to put percentage, but if you look at what the government requested and what he granted, he granted maybe 50% of what the government wanted. And on top of that, the evidence that came before the jury is not, as defense counsel is saying, it was in summary form. It was in the sense of how many robberies had you committed with X? Five or six. How many robberies have you committed with Y? Five or six. It wasn't now tell me in full detail each and every robbery and the circumstances with every robbery. The evidence that came before the jury was clearly within the court's ruling and the basis for the court's ruling. Can I ask you, can you describe to us a case in which there are several defendants alleged to have committed a crime together, in which under your theory the prosecution would not be entitled to put into evidence every prior crime in which any subset of those defendants participated together? Your Honor, I can't, because even if they know each other, it's not enough. People have different relationships. With family, friends. Just because you have a friend doesn't mean you have the ability to commit this type of crime with that friend. The only way you can put before the jury the context of the relationship is introducing these prior acts, which of robbery, of committing a criminal act together. And how does the fact that two of these guys without the ringleader Diaz committed five robberies together at some prior date assist the jury in finding out whether they committed the acts that are charged here? That's what committed the acts, Your Honor, but their ability to act together as a team. And that's what's key in this case. Because you have to look at what this case was. This wasn't two people going into a grocery store at gunpoint, robbing the cashier and then running to their car and leaving. This was a well-planned operation, is the only way to describe it, where they planned it to the T. What I mean by that is the following. But you can put in the evidence of planning. No one's debating that. Yes, but without, Your Honor, this prior 444B special relevance evidence, the jury would be left to wonder, how is it possible that all these individuals could conduct such a, for lack of a better word, a police operation? The jury would say it doesn't make any sense that three cars would stop one car conduct this special operation that we only see police officers doing. It doesn't make any sense. I don't believe the government witnesses because there's no way they could have acted as such a group or coordinated, organized team. This evidence helped the jury believe that. You put in evidence of prior offenses that had nothing to do with stopping a car using police uniforms and the like. That is accurate, Your Honor, but the evidence showed the ability of these individuals to work together as a team. So take the two guys who go in and rob a pharmacy together. One holds the gun, the other goes through, checks the drawers. They're in and out of there quickly. Under your theory, if they had robbed any other place together at any point, you'd get to put that into evidence to show their relationship of trust and that they could work together. Not necessarily, but this case is distinguishable because in this case there were multiple robberies, and that's actually key. The fact that they had done multiple acts together, that they had worked together on multiple occasions, that demonstrates their ability to work together. These are not just random individuals who got together for one incident and then went their separate ways. These are individuals who all coordinated together. We're not just talking about two co-conspirators. We're talking about multiple co-conspirators acting together multiple times, and then these same co-conspirators participate in the incident offense. But that's not the case. There weren't the same group involved in each of the crimes you put in. In fact, the ringleader wasn't in most of them, was he? That is accurate, Your Honor, but you have at least three. You have Romulo Bello Negro, you have Viscarondo Casanova, you have Ricardo Germanino, and you have Noel Rosario Colón. That is four individuals who have participated in multiple robberies together as a team. All four of them at the same time? Yes, Your Honor. There was evidence of that at trial. At least four. And while you are correct... In every crime you put in? Not every, Your Honor, but many. Many were together, not every. You want us to sustain the admission of all of them? That is correct, Your Honor. So what's your theory for getting all of them in? The theory that Judge Pesoso allowed it in, to show the formation of the relationship between these co-conspirators, and to show how they were able to work together as a team. We have to look at the judge, not only conducted the 403 analysis... On that, on the 403 analysis, understanding that the standard of review is abusive discretion, and district judges are, of course, given wide latitude in this area, why is it necessary to state what the specific crimes were, that they were robberies? Why isn't it enough for purposes of this case to state that? Why isn't it enough for purposes of relevance to make a more general statement, to bring in more general evidence? Your Honor, I would answer that in the following way. Just because two people are able to commit one crime successfully together, doesn't mean they are able to do another one successfully together. For example, just because two or three or four individuals can successfully work as a team to commit a robbery, doesn't mean that they'll be able to commit wire fraud, or embezzle funds from a company. They might not work well with that particular crime. That's why it was extremely relevant to introduce the type of crime, because that's what this crime, the incident offense was. It was a carjacking robbery. That's where the relevance lies. So you've limited your presentation to carjacking robbery cases? No, Your Honor, just robbery cases. And... You know, I've read a lot of the columns in most of them, not all the same people. It seems to me you just took a list of every single crime that involved any of these guys and tried to get the judge to put it in, and he let you put in a lot of them. Your Honor, that wasn't the case. The case was the government picked crimes, robbery, which were similar to the incident offense to show that when it comes to robbing individuals, these people can work well together, because they have this formation of trust where they can work together and they can work as a team. And that's why it was relevant. And even if the court would find that maybe the evidence went overboard, it was overwhelming evidence of guilt in this case. Excuse me, counsel. Judge Lynch, do you have any questions of Mr. Contreras? Yes, I do. I'd like to follow up on a point that you,  Mr. Contreras, is it the government's position that today, after Apprendi and after Olayne, that the indictment on these counts did not require a statement of death resulting or bodily injury resulting? Well, Your Honor, I could say that it is Department of Justice policy to now include those factors in the indictment. So going forward... I thought you were saying there was no error. Yes, I am, Your Honor. Given that those factors were submitted to the jury for consideration... No, no, no. There may have been error, but it may be harmless. Isn't that what you're arguing? It's a very good distinction, Your Honor. However, we're arguing that it was not error, that those are separate factors. I understand the question. I'd rather explain why, if today, you would have been required to restructure the indictment, why it wasn't error. I wouldn't say it was so much required, Your Honor. I would say we have been directed internally to include those factors in our indictments. But I would distinguish between required... I assume that advice follows from Apprendi and Olayne. I would assume so also, Your Honor, yes. All right. Thank you. You're welcome. Thank you. Ms. Middleman, I believe you reserved. Thank you. The district court discussed Cotton in the opinion, in this case, 865F sub second 201. And I think that the reason there, again, shows the confusion because he talked about Cotton providing for enhanced penalties based on drug quantity. And that's different than being an element of the crime. And they didn't discuss Jones. So I think, again, there's a perpetual confusion between what is a sentencing factor, and the government seems to still call these sentencing factors, and elements of the offense as Justice Souter discussed in Jones. And I think there needs... And if you read through the cases like I have, you can see the words kind of get dumbled in a lot of the cases. And I think there needs to be a much stronger depiction of that. Thank you. I appreciate that. I'm not sure that this court is confused, but do you have more... I didn't mean you were confused. I'm saying the opinions. No, I never implied that this court was confused. I just wanted to point out that the district court said in this same opinion I'm reading to you that the plain error standard did not apply under Cotton because they had raised the issue about whether it had to be in the indictment. But they called it enhanced penalties, but they still had raised the issue. What's the harm here to your client? Again, I think that... I'm not sure that harm is the question under Jones. I think Justice Souter said that they're required to have a charge in the indictment and tried at the jury. So I don't think harm is the issue. I think it's a constitutional requirement that those elements be included. I think Justice Souter did an excellent job of explaining the history of Jones. Thank you.